[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Christopher J. Blackwell (hereafter, "Blackwell") has appealed from a decision of the Commission on Human Rights and Opportunities (hereafter, "Commission"), dismissing his discrimination complaint against the respondent, Business Systems, Inc. (hereafter, "BSI").[1] He appeals pursuant to sections 46a-94a and 4-183 of the General Statutes, claiming that the Commission's findings and decision are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The Commission acted in accordance with Sec. 46a-83
of the General Statutes.
In an affidavit of illegal discriminatory practice the appellant filed with the Commission on February 9, 1996, he claimed that he was discharged by his employer, BSI, in retaliation "solely because . . . [his] wife fil[ed] a lawsuit against [BSI]," in violation of Sec. 46a-60 (a)(4) of the General Statutes. BSI denied these allegations and asserted that Blackwell was terminated for violating company policy in that he gained unauthorized access to his personnel file and the employment files of others, and he tape recorded a conversation with his supervisor without first informing the supervisor, an action considered by the employer as a "destroyer of trust."
The facts in the record reveal that Blackwell was employed by BSI as a paramedic from approximately June, 1987, until his termination on September 21, 1995. On or about August 13, 1993, his wife, Jane Blackwell, applied for an emergency medical technician ("EMT") position with BSI. Subsequently, BSI informed Jane Blackwell that it has a policy against hiring married couples in circumstances in which the spouses may work on the same shift together as EMTs, and when one spouse may supervise the other. Both conditions were present in Jane Blackwell's case.
On or about December 17, 1993, she filed a complaint with the Commission alleging that BSI's hiring steps or job qualifications CT Page 3828 have a discriminatory impact on marital status and that BSI had discriminated against her in violation of Sec. 46a-60 (a)(1) of the General Statutes. On May 18, 1995, the Commission issued her a right to sue letter informing her of her right to file a lawsuit against BSI. On August 1, 1995, pursuant to Sec. 46a-101
of the General Statutes, she filed suit against BSI.
In his complaint to the Commission, the appellant alleged that beginning in August, 1995, he felt he was being targeted and harassed, and was ultimately discharged by the respondent as a result of his wife's lawsuit against BSI. He alleged that shortly after his wife filed the lawsuit, for the first time during his employment with BSI, he was targeted for investigation as part of an internal audit for excessive absences. Evidence in the record reveals that on August 7, 1995, BSI did indeed investigate his absenteeism and determined that his sick leave between January and August, 1995, totaled 64 hours. Information provided by BSI in its response indicated that for the period between January and August, 1995, his sick time was twice the average sick leave for other 32-hour paramedics during the same period, and triple the average sick leave for other full-time paramedics for the same period.
As a result of the investigation, BSI sent the appellant a letter dated August 27, 1995, indicating that excessive absences would result in an automatic decrease of his control hours. He alleged that the investigation and the subsequent letter were harassment techniques "designed to place pressure on [him] so as to induce . . . his wife to terminate" her lawsuit against BSI. BSI claimed in its response, however, that it performed such an investigation of all paramedics to confirm an observed trend of increased absenteeism among paramedics who, like Blackwell, worked two full-time jobs. In addition, BSI provided information in its response that as a result of previous investigations, it had reduced the work hours of other employees with attendance problems related to second jobs. BSI listed the names and hourly reductions of four such employees.
At some point after he received the letter regarding absenteeism, the appellant obtained access to his personnel file. He alleged that his access to his personnel file was "in the authorized presence of Paul Rekos, a Lead Medic, whom [he] thought was authorized to provide access to his employment file . . . and to reproduce copies of the recent unwarranted investigation . . . [of his] absenteeism." He alleged further CT Page 3829 that Rekos "accompanied [him] into the office so as to permit [his] access to his own employment file," that Rekos was present during the entire time Blackwell viewed his file, and that he did not view any employee files other than his own.
In response to these allegations, BSI presented signed statements from several BSI employees. In a statement dated September 20, 1995, Paul Rekos stated that he never granted the appellant access to the personnel files, but that he did recall walking into the office several months earlier and witnessing him standing in the manager's office with a piece of paper in his hand. Rekos also stated that at that time, he was not lead paramedic and could not have authorized Blackwell to access his personnel file. In another statement dated September 20, 1995, Liz Balbirnie, the employee who calculated Blackwell's sick leave, stated that during the week of September 11, 1995, he asked her whether she had performed sick leave calculations on other employees. When Balbirnie stated that she had, he replied: "When I looked in the employee files I did not see anything." Balbirnie also stated that the following day she informed the supervisor and the manager of this incident and that, to her knowledge, the employee files were relocated.
As a result of Balbirnie's disclosure regarding the appellant's access to personnel files, on the afternoon of September 19, 1995, his supervisor, Matt Cassavechia, called a meeting with him and Janet Telford, a lead paramedic. When asked about his access to personnel files, Blackwell relayed essentially the same version of the incident as alleged in his complaint. Cassavechia then discussed the incident with Rekos, the paramedic whom the appellant alleged granted him access to the files. After obtaining a contradictory statement from Rekos, Cassavechia confronted Blackwell with Rekos on the evening of September 19, 1995.
Blackwell tape recorded the second meeting on September 19. He alleged that "fearful that he was being harassed and about to be fired, [he] decided to openly tape record this conversation so as to have evidence of retaliatory firing on account of [his wife's] pending lawsuit." He further alleged that when he was asked what was in his shirt pocket, he told Cassavechia that it was a tape recorder and explained why he was taping the conversation. BSI denied that the appellant "openly" tape recorded the conversation. The statements of Rekos and Cassavechia indicate that during the course of the meeting, CT Page 3830 Cassavechia noticed a red light in Blackwell's right pocket. Cassavechia asked him what was in his pocket, and he stated that it was a tape recorder. Cassavechia then terminated the discussion.
Two days later, on September 21, 1995, BSI discharged Blackwell. An employee change notice form included in his personnel file submitted to the Commission stated: "Termination code C . . . violation of co[mpany] policy." In a letter to him dated October 16, 1995, BSI vice president Morris Gross stated that he was terminated because he did not obtain authorization from a person of authority to enter his file, he had examined employment files of others, and that he had used a tape recorder without notifying the person being recorded, which was a "destroyer of rust."
On February 9, 1995, the appellant filed a complaint with the Commission alleging retaliatory discharge by BSI in violation of Sec. 46a-60 (a)(4) of the General Statutes.[2] Pursuant to Sec. 46a-83 (b), the Commission assigned the case to a designee for review.[3] Pursuant to the review process proscribed in Sec. 46a-83 (b), the designee gathered, reviewed and summarized Blackwell's complaint, BSI's answer and all other documentation provided by the parties.
After conducting the review, the Commission's designee concluded that his claim should be "reviewed out" on the ground that there was no reasonable possibility that investigating the complaint would result in a finding of reasonable cause. The designee's determination was approved by the regional manager on May 10, 1995, and on the same day, the Commission mailed Blackwell a notice of final agency action. In the notice, the Commission dismissed his complaint for the following reasons:
 [Y]our complaint has been reviewed out for the reason that there is no reasonable possibility that further investigation will result in a finding of reasonable cause inasmuch as it was determined that your termination was the direct result of your violation of company policy-unauthorized entry into Respondent's personnel files. The record reflects that you were investigated along with several other employees for excessive absences in 1995. Your wife filed a complaint alleging discriminatory practices by the Respondent on December 17, 1993. Your termination occurred almost two years from the date of your wifes's [sic] complaint. Because CT Page 3831 your termination and the filing of your wife's complaint are so remote in time, it does not appear as if your termination was in retaliation against your wife's filing a CHRO complaint in 1993.
On June 24, 1995, the appellant commenced this appeal of the Commission's decision in accordance with sections 46a-94 and4-183 of the General Statutes, claiming that the Commission's findings and decision were "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record" under Sec. 4-183 (j)(5). "Appeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." (Citations omitted; internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of Public UtilityControl, 234 Conn. 624, 640 (1995); see also Connecticut Bank Trust Co. v. Commission on Human Rights Opportunities,202 Conn. 150, 154 (1987). Appeals from a final decision of the Commission are governed by Sec. 4-183 of the Uniform Administrative Procedure Act ("UAPA"), General Statutes Sec.4-166, et. seq. Miko v. Commission on Human Rights Opportunities,220 Conn. 192, 197 (1991).
Sections 46a-94a and 4-183 of the General Statutes require that an appealing party be aggrieved. "[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must . . . demonstrate a specific personal and legal interest in the subject matter of the decision. . . . Second, the party . . . must . . . establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) United Cable TelevisionServices Corp. v. Dept. of Public Utility Control, 235 Conn. 334,342-43 (1995).
In the present appeal, the appellant alleges that his termination was the result of retaliation against him by BSI in violation of Sec. 46a-40 (a)(4) because his wife filed a discrimination complaint against BSI with the Commission and in CT Page 3832 court. The Commission found against him and dismissed his complaint. Accordingly, to reiterate, he has a personal and legal interest in the subject matter of the Commission's decision and has been specially and injuriously affected by it. Since aggrievement is established if there is a possibility that some legally protected interest has been adversely affected, the court can conclude that the appellant is aggrieved within the meaning of sections 46a-94a and 4-183.
"General Statutes § 4-183 (c) provides that an appeal must be filed with the Superior Court within forty-five days after the hearing officer's final decision was mailed [to the claimant]. Failure to appeal within forty-five days deprives the court of subject matter jurisdiction." Ann Howard's ApricotsRestaurant, Inc. v. Commission on Human Rights and Opportunities,237 Conn. 209, 219-20 (1996).
The Commission mailed its notice of final agency action to the plaintiff via certified mail, return receipt requested, on May 10, 1996. Pursuant to Sec. 4-183 (c), Blackwell served a copy of the appeal upon Morris Gross, Vice President of BSI, and the State of Connecticut Commission on Human Rights and Opportunities, via certified mail, postage prepaid, on June 24, 1996. He filed his appeal with the court on June 24, 1996, and the affidavit of service upon the respondents on July 5, 1996. The Commission filed an answer and a certification of record on August 28, 1996. The respondents, Danbury Hospital and Business Systems, Inc., filed an answer on October 23, 1996. Each of the parties filed trial briefs, and the appeal was heard by the court on December 9, 1996. In accordance with the preceding facts, the present appeal was timely filed and properly served within the forty-five day limit imposed by
Section 46a-83 (b) of the General Statutes, as amended byPublic Act 94-238, empowers the Commission to dismiss any complaint if, after reviewing "the complaint, the respondent's answer and the responses to the commission's requests for information, if any, and the complainant's comments, if any, to the respondent's answer and information responses. . . . the [commission] determines that . . . there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause." Reasonable cause in this context means "a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint." Section 46a-83
CT Page 3833 (c) of the General Statutes.
The scope of review to be exercised by the trial court in reviewing a Commission determination is limited. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Citations omitted; internal quotation marks omitted.) Dufraine v. Commission on Human Rights Opportunities,236 Conn. 250, 259 (1996). "This `substantial evidence rule' is embodied in General Statutes § 4-183 (j)(5). . . ." supra, 260 n. 10.
Section 4-183 (j) provides that when reviewing an agency determination on appeal, the trial "court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . ." "The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred." "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Dufraine v. Commission on Human Rights Opportunities, supra.
Section 46a-60 (a)(4) of the General Statutes declares it illegal for any employer "to discharge . . . any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding under 46a-82, 46a-83 or 46a-84." The appellant alleges that BSI discharged him in retaliation for his wife's filing a discrimination complaint in court against BSI in August, 1995. The Commission determined that Blackwell's termination was not in retaliation for his wife's complaint, but "was a direct result of [his] violation of company policy-unauthorized entry into Respondent's personnel files." Moreover, in response to his allegation that BSI's investigation of his absenteeism record was an attempt by his employer to harass him because of his wife's complaint, the Commission concluded that Blackwell's termination CT Page 3834 in September, 1995, and his wife's filing of her initial complaint with the Commission in December, 1993, were too remote in time to support a conclusion of retaliation.
The appellant admits that in early September, 1995, he accessed his personnel file. Although he alleges that his access to his personnel file was authorized by and in the presence of an employee whom he believed was authorized to provide access to employment files, the record contains several signed statements of other BSI employees that directly contradict those allegations. Such statements reveal that the employee whom Blackwell thought was authorized to access personnel files not only was not so authorized at that time, but denied granting any such access to him and being present during the entire incident. Moreover, contrary to his assertion that he did not view any employee files other than his own, another BSI employee stated that he had indicated to her previously that he had looked through other files. This evidence was substantial enough to support the Commission's conclusion that his access to employment files was unauthorized.
The statements of the BSI employees also demonstrated that immediately after BSI learned of Blackwell's unauthorized access to the files, and the probability of his having viewed other employee files, BSI management discussed the incident with him and questioned the employee whom he said granted him access. In the face of contradictory statements made by several other employees, BSI confronted the appellant a second time and then took immediate action to terminate him. From these facts, the Commission could reasonably have concluded that Blackwell's termination was the direct result of his unauthorized access to personnel files.
When taken as a whole, the evidence in the record supports the Commission's finding that Blackwell's termination was the direct result of his violation of company policy in obtaining unauthorized access to his employer's personnel files. "In reviewing decisions made by an administrative agency, a reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial. . . ." (Internal quotation marks omitted.) Adriani v. Commission on Human Rights Opportunities,228 Conn. 545, 550-51 (1994). In making its determination that further investigation was not likely to result in a finding that CT Page 3835 reasonable cause exists that retaliation occurred, the Commission is authorized by Sec. 46a-83 to rely on the documentary evidence supplied by the parties. The appellant did not submit any documentation to controvert the evidence contained in the signed statements produced by BSI which supported the Commission's conclusion.[4] The Commission is entitled to weigh the evidence before it, and "the reviewing court must defer to the agency's assessment of the credibility of witnesses. . . . Ultimately, [t]he question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken." (Citations omitted: internal quotation marks omitted.) Miko v. Commission on Human Rights Opportunities, supra, 200-01. While in light of the appellant's wife's pending action against BSI, the severity of BSI's reaction to Blackwell's unauthorized access to personnel files could potentially have led to a different conclusion by the Commission, the role of this court is not to make the determination de novo but to determine whether substantial evidence supported the conclusion reached by the Commission. Adriani v. Commission onHuman Rights Opportunities, supra, 550-557; Miko v. Commissionon Human Rights Opportunities, supra. The appellant's unauthorized access to his own and other employees' personnel files was reasonably viewed by the Commission as a convincing and adequate reason for termination of employment, particularly when coupled with the remote time-frame of his wife's initial complaint against BSI, and the agency acted reasonably in concluding that a reasonably prudent person could not have believed that BSI's actual reason for discharging the plaintiff was retaliation because of his wife's lawsuit, as alleged in his complaint.
In light of the substantial evidence in the record, the Commission's decision to dismiss Blackwell's complaint on the ground that there is "no reasonable possibility that investigating the complaint will result in a finding of reasonable cause" pursuant to § 46a-83 (b) is not clearly erroneous under § 4-183 (j)(5). The appellant's appeal is, accordingly, dismissed.
Moraghan, J.