LAURA DUFRAINE *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
(15245)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued January 12—decision released March 19, 1996

*Charles Krich*, assistant commission counsel, with whom was *Philip A. Murphy, Jr.*, commission counsel, for the appellant (named defendant).

*Richard W. Gifford*, for the appellee (plaintiff).

KATZ, J. The plaintiff, Laura Dufraine, initiated a complaint with the defendant commission on human rights and opportunities (commission) against her employer, alleging discrimination and retaliation. The commission, following an investigation, issued a finding of no reasonable cause as to both allegations. The plaintiff appealed to the trial court, which concluded that the commission had incorrectly determined that there was no reasonable cause and remanded the case to the commission for a hearing before a hearing officer. The

issue before us is whether the trial court properly ordered the commission to hold a hearing, rather than remanding the matter to the commission for further investigation of the plaintiff's complaint.

The following facts are undisputed. The plaintiff filed an affidavit of illegal discriminatory practice with the commission charging her former employer, E. J. Stephens, Inc. (Stephens),[1] with sexual discrimination. In specific, she alleged that because Stephens had suspended her without pay for failing to comply with his call-in policy,[2] when male employees who had failed to comply had not been suspended, Stephens had violated General Statutes § 46a-60 (a) (1).[3] Thereafter, in an amended affidavit, the plaintiff alleged that by having transferred her job duties and having been excessively critical of her work after learning of the first affidavit, Stephens had retaliated against her in violation of § 46a-60 (a) (4).[4]

---

[1] The plaintiff originally filed this affidavit against Edward J. Stephens, the president of E. J. Stephens, Inc. The response was submitted by E. J. Stephens, Inc. The trial court and the parties in their briefs treated the individual and the company as one, referring to either the "E. J. Stephens Company" or "he." For both simplicity and consistency, we refer to both E. J. Stephens, the individual, and E. J. Stephens, Inc., as "Stephens" or "he."

[2] On June 26, 1991, Stephens adopted a policy that required every employee to speak personally to him at 9 a.m. if the employee needed to be absent from work due to illness.

[3] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness."

[4] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section . . .

"(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has

## Pursuant to General Statutes (Rev. to 1991) § 46a-83,[5] the commission assigned an investigator to examine

filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[5] General Statutes (Rev. to 1991) § 46a-83 provides: "Complaint: Investigation; conciliation; disclosure; subpoena. (a) Within ten days after the filing of any discriminatory practice complaint, or an amendment adding an additional respondent, the commission shall cause the complaint to be served upon the respondent together with a notice (1) identifying the alleged discriminatory practice, and (2) advising of the procedural rights and obligations of a respondent under this chapter. The respondent may file a written answer to the complaint under oath with the commission within fifteen days of receipt of the complaint, provided the answer to any complaint alleging a violation of section 46a-64c may be filed within ten days of receipt. The chairman of the commission shall refer the same to a commissioner or investigator to investigate and determine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. The commission may conduct fact-finding conferences during the investigatory process for the purpose of finding facts and promoting the voluntary resolution of complaints. As used in this section and section 46a-84, reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint.

"(b) Before issuing a finding of reasonable cause or no reasonable cause, the commissioner or investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The commissioner or investigator shall consider such comments in making his determination. The commissioner or investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than nine months from the date of filing of the complaint, except that for good cause shown, the commission may grant a single extension of the investigation of three months.

"(c) If the commissioner or investigator issues a finding of no reasonable cause, the complainant may request reconsideration of such finding with the commission not later than fifteen days from the issuance of such finding. The commission shall reconsider or reject within ninety days of the issuance of such finding.

"(d) Upon a determination that there is reasonable cause to believe that a discriminatory practice has been or is being committed as alleged in the complaint, the commissioner or investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within sixty days of a finding of reasonable cause. The refusal to accept a settlement shall not be grounds for dismissal of any complaint.

"(e) No commissioner or investigator may disclose, except to the parties or their representatives, what has occurred in the course of such endeavors

the allegations and investigate the complaint. The investigator concluded that reasonable cause did not exist for believing that Stephens had committed any discriminatory practices against the plaintiff. Although the plaintiff had been the first person suspended for failing to call Stephens when taking a day off from work for illness, the investigator found that she was not the only one to be so treated. A male employee had also been suspended for similar noncompliance with the policy a few weeks after the incident involving the plaintiff. Moreover, the investigator found that Stephens had suspended the plaintiff because of her "poor attitude towards him" at a meeting that had been held to discuss her absence. Additionally, the investigator concluded that Stephens had not impermissibly retaliated against the plaintiff after learning of her first affidavit. Rather, the investigator determined that Stephens had removed certain job duties from the plaintiff because of a legitimate interest in protecting the integrity and confidentiality of certain financial information. Although Stephens was less deferential toward the plaintiff after she filed the first affidavit, the investigator found that Stephens generally treated all employees badly. Accordingly, the commission found no reasonable cause for either allegation and dismissed the amended affidavit.

The plaintiff appealed from the commission's dismissal to the Superior Court pursuant to General Statutes (Rev. to 1991) § 46a-94a.[6] The trial court concluded

provided the commission may publish the facts in the case and any complaint which has been dismissed and the terms of conciliation when a complaint has been adjusted. Each party and his representative shall have the right to inspect and copy documents, statements of witnesses and other evidence pertaining to his complaint, except as otherwise provided by federal law or any other provision of the general statutes.

"(f) In the investigation of any complaint filed pursuant to this chapter, the commission may issue subpoenas requiring the production of records and other documents relating to the complaint under investigation."

[6] General Statutes (Rev. to 1991) § 46a-94a provides: "Appeal to superior court from order of hearing officer. The commission on human rights and opportunities, any respondent or any complainant aggrieved by a final order

that the commission had failed to conduct a complete and thorough investigation. It found that the investigator had not interviewed Dennis Webb, the male employee whom Stephens had suspended for failing to comply with the call-in policy. According to the trial court, "[h]ad the investigator contacted Webb, he might have been able to establish whether Webb's suspension was legitimate or an attempt by Stephens to protect himself against a discrimination claim by [the] plaintiff. Accordingly, having failed to interview Webb, there is no basis in the record for concluding that Webb was in the same position as [the] plaintiff or that Webb's suspension demonstrates that the suspension policy was not discriminatorily applied as to [the] plaintiff because of her sex."

Additionally, the trial court criticized the investigator for his incomplete examination of the attendance records that Stephens maintained during the time the call-in policy was in effect, and for failing to pursue the numerous questions raised by those records that he had examined. In specific, the trial court found that "the investigator failed to examine company attendance records from June 26, 1991, [the day the policy was initiated] to December 31, 1991, to determine who was out sick during the pendency of the call-in policy and whether the policy had been adhered to." The trial court concluded that such a review would have been relevant as to another employee, Glenn Scott, who acknowl-

of a presiding officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183, except venue for such appeal shall be in the judicial district in which the discriminatory practice is alleged to have occurred or in the judicial district in which such person resides or transacts business. The court on appeal shall also have jurisdiction to grant to the commission, respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed."

edged that he had failed to call Stephens when he was out sick but who did not know whether the policy was in effect at that time. It stated that "[m]oreover, company attendance records reflect that from January 1 to April 2, 1992, other employees were out sick but the investigator never interviewed them to determine whether they had adhered to the call-in policy." In the trial court's view, this would have been helpful in ascertaining whether three other employees, all of whom had been out sick during the time the policy was in effect, had adhered to the policy.

Although it determined that the commission's investigation had not been thorough and complete, the trial court concluded that there was no need to remand the case to the commission for further investigation because "the [commission's] no reasonable cause finding is not supported by substantial evidence in the administrative record as it already exists. The evidence in the record reflects that 4 male employees, out of a total of 14 employees, admitted failing to adhere to the call-in policy. . . . The record reflects that in all instances where male employees violated the call-in policy, Stephens accepted the explanations for their absences. The only explanation not accepted was [the] plaintiff's, a female . . . . This evidence constitutes reasonable cause to believe that [the] plaintiff's suspension was a result of a discriminatory application of the call-in policy, in violation of the law."[7]

With respect to the retaliation claim, the trial court found similar deficiencies in the investigation. The

---

[7] The trial court's conclusions that four male employees admitted that they had failed to adhere to the policy and that, in each instance, Stephens had accepted the explanation for their absences contradicts some of the court's own earlier findings. Our review of the trial court's opinion indicates that at least three men had failed to adhere to the call-in policy during the period in which it was in effect and that the evidence was insufficient to determine whether a fourth man had complied with the policy.

investigator had neglected to make a full inquiry into several of the incidents of which the plaintiff had complained. One such incident involved a written telephone message that contained a misspelling that, according to the plaintiff, caused Stephens to be abusive toward her. Stephens, however, denied the incident. Had the investigator examined the message, he may have found that it corroborated the plaintiff's allegation. The investigator similarly failed to question Stephens about several other events that led to his criticism of the plaintiff's work, including one during which he called her "dense." The court found the poor investigation noteworthy, particularly because the incidents during which Stephens called the plaintiff names were featured prominently in her affidavit. Additionally, the trial court noted a memorandum in the plaintiff's personnel file regarding unauthorized extra time at work that the commission had relied upon in its decision, and concluded that, in light of the investigator's incomplete inquiry into the content of this memorandum, "its evidential weight [was] minimal." Likewise, in the trial court's opinion, "there [was] no evidence in the record about how Stephens treated other employees because the investigator did not interview all employees, and the ones he did interview never said Stephens treated them badly."

In addition to its criticism of the investigation, the trial court also decided that the facts found and conclusions drawn from those facts by the commission were not supported by substantial evidence and were not reasonable. For example, although Stephens had explained that the reassignment of some of the plaintiff's job responsibilities was necessary for reasons of confidentiality, the trial court concluded that the record contained no evidence that Stephens had considered the material in question to be of a confidential nature prior to the plaintiff filing the first complaint. Additionally, although according to the commission, Stephens

had treated all of his employees poorly, the trial court concluded that the record reflected that his abuse of the plaintiff had begun only after she had filed her first complaint and therefore had been retaliatory. Finally, the court criticized the commission's finding that some of the plaintiff's duties had been reassigned because of her poor performance in light of Stephens' statements that her work was satisfactory and that she had received frequent salary raises reflecting good work quality.

The trial court concluded that there was sufficient substantial evidence in the record to permit a person of reasonable judgment to believe that, when he had suspended the plaintiff on April 2, 1992, Stephens had discriminated against her because of her sex and that he had retaliated against her because of her complaint against him with the commission. Additionally, the trial court found that the record did not contain substantial evidence to support the commission's findings of basic fact, and furthermore, that the conclusions the commission had inferred from those facts were not reasonable. The court concluded that, in finding no reasonable cause, the commission had abused its discretion by refusing to consider the great weight of the evidence in the plaintiff's favor. Accordingly, the court sustained the plaintiff's appeal and remanded the case for a hearing pursuant to General Statutes (Rev. to 1991) § 46a-84.[8]

The commission appealed from the judgment of the trial court to the Appellate Court, and we transferred

---

[8] General Statutes (Rev. to 1991) § 46a-84 (b) provides: "Upon certification of the complaint, the chairman of the commission shall appoint a hearing officer or one member of the commission to act as a presiding officer to hear the complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the presiding officer at a time and place to be specified in the notice, provided such hearing shall be held not later than ninety days [after] a finding of reasonable cause."

the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The commission argues that, upon concluding that the commission's investigation of the plaintiff's complaint had not been thorough and complete,[9] the trial court was required to order the commission to conduct a full and proper investigation rather than to remand the case to the commission to hold an immediate hearing on the complaint. The plaintiff argues, however, that no further investigation is required because the trial court properly determined that there was evidence demonstrating that reasonable cause existed to find that the plaintiff had been discriminated and retaliated against. We agree with the commission and therefore we reverse the judgment of the trial court and remand the case to that court with direction that the commission be ordered to conduct a full and proper investigation.

"We first note the limited scope of review to be exercised by the trial court in reviewing a [commission] determination that there is no reasonable cause to believe that a discriminatory practice has been committed. 'Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable.' *Connecticut Light & Power Co.* v. *Department of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990); *Board of Education* v. *Commission on Human Rights & Opportunities*, 176 Conn. 533, 538, 409 A.2d 1013 (1979)." *Adriani* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 314–15, 596 A.2d 426 (1991) (*Adriani I*). "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency

---

[9] The commission does not challenge this conclusion by the trial court.

finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) *Newtown* v. *Keeney*, 234 Conn. 312, 319–20, 661 A.2d 589 (1995); *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 588, 628 A.2d 1286 (1993). This "substantial evidence rule" is embodied in General Statutes § 4-183 (j) (5) and (6).[10]

"The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." (Internal quotation marks omitted.) *Adriani I*, supra, 220 Conn. 315. The issue before the trial court, therefore, was whether there was a substantial basis in the record to support the commission's finding of no reasonable cause for either the discrimination or retalia-

[10] General Statutes § 4-183 (j) provides in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

tion allegation. As we noted previously, "the term 'reasonable cause' as used in § 46a-83 is synonymous with the term 'probable cause.' . . . 'Probable cause is a bona fide belief in the existence of facts essential under the law for the action *and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.* . . . Probable cause is a flexible common sense standard. . . . It deals with probabilities, and the application of the factual and practical considerations of everyday life on which reasonable and prudent men act.' " (Emphasis in original.) *Adriani* v. *Commission on Human Rights & Opportunities*, 228 Conn. 545, 549–50, 636 A.2d 1360 (1994) (*Adriani II*).

In order to determine whether there was substantial evidence in the record to support the commission's determination, the commission must have conducted a complete and thorough investigation. We have held that "reasonable cause determinations made pursuant to General Statutes (Rev. to 1987) § 46a-83 require an investigator to consider all reliable probative evidence, including evidence unfavorable to a complainant's claim," before deciding the question of reasonable cause. Id., 549; see *Adriani I*, supra, 220 Conn. 316–17. As the trial court discussed in detail, however, here the investigator had failed to make the requisite complete and thorough investigation. Therefore, the trial court could not apply the substantial evidence standard to the record before it because the record was incomplete. Accordingly, the trial court was required to remand the complaint to the commission for additional investigation.

We have previously noted "that one of the purposes of the reasonable cause determination is to protect respondents from having to go through the hearing process in cases where the complaint is baseless." *Adriani I*, supra, 220 Conn. 317. "To guard against such an

eventuality, the statute requires the commission, once a complaint has been filed, to investigate it, and it is only after such preliminary investigation has established that there is reasonable cause for action and after arbitration methods have failed that a hearing is authorized." *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 235, 278 A.2d 771 (1971). In *Waterbury*, we held that the commission did not have "jurisdiction to hold a hearing" because the record did "not disclose that the commission ever undertook any of the required steps before assigning the matter for hearing." Id.; see General Statutes (Rev. to 1991) § 46a-83 (a) (investigation into whether reasonable cause exists is required step prior to certifying complaint for hearing). Because such reasonable cause determination must be based upon all reliable probative evidence gathered following a complete and thorough investigation, the failure to conduct such an investigation necessarily deprived the commission of jurisdiction to hold a hearing on the complaint. See *Adriani I*, supra, 316–17.

The practical purpose of this rule is amply demonstrated by the case at hand. With respect to the discrimination claim, the investigator failed to determine whether other absent employees adhered to the call-in policy. For example, the investigator did not determine whether another female employee, Lynn Lamesa, had adhered to the call-in policy when she was absent from work. If Lamesa had failed to abide by the policy and had not been suspended, then the plaintiff's sex discrimination claim would be significantly weakened, thereby supporting the investigator's finding of no reasonable cause. Another example of how the investigation was incomplete involved the suspension of a male employee, Dennis Webb, who also had failed to call in. Webb's suspension followed the plaintiff's suspension. The trial court found that "the investigator never inter-

viewed Webb to determine the reason for the suspension, that is, to determine whether Webb had been suspended for failing to call Stephens or because he had a sarcastic or defiant attitude upon his return to work, as has been the case with [the] plaintiff. Had the investigator contacted Webb, he might have been able to establish whether Webb's suspension was legitimate or an attempt by Stephens to protect himself against a discrimination claim by [the] plaintiff. Accordingly, having failed to interview Webb, there is no basis in the record for concluding that Webb was in the same position as [the] plaintiff or that Webb's suspension demonstrates that the suspension policy was not discriminatorily applied as to [the] plaintiff because of her sex." A more thorough investigation could result in the determination either that Webb's suspension had been legitimate and therefore that the plaintiff's prior suspension may not have been discriminatory, or that Webb's suspension had been a sham undertaken specifically to counter an anticipated legitimate sex discrimination complaint by the plaintiff. These are only two examples of the ambiguities surrounding the discrimination claim, which may be settled only through a complete investigation.

The investigative shortcomings are less evident with respect to the plaintiff's retaliation claim. The investigator failed to investigate fully a number of issues raised by the plaintiff, such as Stephens calling her "dense" after she filed the discrimination complaint with the commission, the plaintiff's alleged misspelling on a memorandum and her alleged failure to answer or direct telephone calls properly. The investigation, however, did yield the finding that Stephens treated the plaintiff differently after she filed the discrimination complaint. Nevertheless, the lack of thoroughness in this aspect of the investigation resulted in a similar lack of sufficient

evidence from which a reasonable cause determination could be made.

The trial court was not in a position to determine the probative value of the missing evidence.[11] Thus, it was improper for the trial court to determine that no further investigation was required simply because the commission's "no reasonable cause finding [was] not supported by substantial evidence in the administrative record as it already exist[ed]." A determination that an existing administrative record does not support, by substantial evidence, a finding of no reasonable cause because the record is itself incomplete does not produce the opposite result, i.e., it does not establish reasonable cause to believe that a discriminatory practice took place. As we held in *Adriani II*, supra, 228 Conn. 551, "[r]easonable cause is determined upon a consideration of all of the evidence."

Further, because of the possibility of more than one outcome on remand, the trial court impermissibly exceeded its limited scope of review of an administrative decision. General Statutes § 4-183 (k); *Newtown* v. *Keeney*, supra, 234 Conn. 321 n.4 (single conclusion of law doctrine has no application where more than one

---

[11] Additionally, the trial court impermissibly substituted its judgment for that of the commission with respect to questions of fact. General Statutes § 4-183 (j) ("[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact"); *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 400, 610 A.2d 620 (1992) (trial court is not to substitute its judgment for that of commission as to questions of fact); *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 536, 560 A.2d 403 (1989) (this principle is "keystone of administrative appeals"); *Hansen* v. *Norton*, 172 Conn. 292, 294, 374 A.2d 230 (1977). In this case, the trial court addressed fact-bound issues of credibility when it chose to credit the testimony of a fellow employee of the plaintiff over that of Stephens with respect to the nature of Stephens' criticism of the plaintiff's work. We specifically stated in *Adriani I*, supra, 220 Conn. 323, that "it is necessary that the commission be allowed to make such credibility determinations if the reasonable cause determination is to serve its intended purpose of screening claims."

outcome is possible on remand). As we held in *Adriani I*, supra, 220 Conn. 329 n.21, "when a trial court concludes that an administrative agency has made invalid or insufficient findings, the court must remand the case to the agency for further proceedings if the evidence does not support only one conclusion as a matter of law."

Lastly, as stated above, in *Waterbury* we held that arbitration of a complaint following a reasonable cause determination is a prerequisite to holding a hearing. *Waterbury* v. *Commission on Human Rights & Opportunities*, supra, 160 Conn. 235. General Statutes (Rev. to 1991) § 46a-83 (d) requires that, upon a determination of "reasonable cause to believe that a discriminatory practice has been or is being committed as alleged in the complaint, the commissioner or investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within sixty days of a finding of reasonable cause."[12] General Statutes (Rev. to 1991) § 46a-84 (a) provides that "[i]f the commissioner or investigator fails to eliminate a discriminatory practice complained of pursuant to section 46a-82 within forty-five days of a finding of reasonable cause, he shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general." Only at that stage in the process is a hearing officer appointed to hear the complaint. General Statutes (Rev. to 1991) § 46a-84 (b). We have previously held that "[a]n administrative agency, as a tribunal of limited jurisdiction, must act strictly within its statutory authority." *Stern* v. *Medical Examining Board*, 208 Conn. 492, 498, 545 A.2d 1080 (1988); *Waterbury* v. *Commission on Human Rights & Opportunities*, supra, 160 Conn. 230. The trial court exceeded its authority under § 46a-84 when it bypassed this required step in the complaint process.

[12] See footnote 5.

The judgment of the trial court is reversed and the case is remanded to the trial court with direction to remand the matter to the commission for further investigation of the plaintiff's complaint.

In this opinion the other justices concurred.