[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals the decision of the Connecticut Human Rights and Opportunities Commission (CHRO) dismissing her employment discrimination complaint. This appeal is brought pursuant to General Statutes §§ 46-83a, 46a-94a, and 4-183.
Plaintiff filed her complaint with the CHRO on November 16, 1995. The complaint alleged employment discrimination by her former employer Hartford Hospital/Institute for Living. Plaintiff alleged that she was terminated from her employment as a nurse in retaliation for her earlier filing of an employment discrimination complaint.[1]
The employer responded to the complaint asserting nondiscriminatory grounds for the termination. Plaintiff's complaint was assigned to a CHRO investigator who dismissed the CT Page 11907 complaint under the agency's Merit Assessment Review pursuant to process, General Statutes § 46a-83 (b), on February 14, 1996.
Plaintiff requested reconsideration, which request was denied on November 20, 1996. This appeal was filed on January 3, 1997. The Answer and Record were filed on March 7, 1997. Briefs were filed by the Plaintiff on April 7, 1997, and CHRO on July 11, 1997. The matter was scheduled for oral argument October 21, 1997. The plaintiff's counsel was unable to appear for argument because of a trial commitment. The court took the case on the briefs and record without objection of counsel.
General Statutes § 46a-83 sets forth the merit assessment review process.[2] A review of the file "shall" be accomplished within ninety days. Section 46a-83 (b). The review includes the complaint, answer, responses to CHRO information requests and complainant's comments to the answer and information responses.
In addition, § 46a-54-68 (a) of the Regulations of Connecticut State Agencies indicates that "The Complainant . . . has a duty to provide any and all information . . . which relates to any contested allegation of the complaint."
The plaintiff's claim is that she was terminated in retaliation for having filed a previous employment discrimination complaint. The respondent Hartford Hospital filed an answer denying the retaliation and setting forth a detailed history of performance problems and nondiscriminatory performance related reasons for the plaintiff's termination.
Plaintiff s complaint alleges that she went on a scheduled vacation on June 8, 1995, at which time she "had no unresolved issues with management." Upon her return on June 17, 1995, she was terminated for the stated reasons of "repeated tardiness, deficiencies, and failure to follow procedures." Plaintiff further alleged that these issues had been resolved prior to her vacation and were merely a pretext for retaliatory discrimination in view of her racial discrimination complaint which had been filed March 21, 1995.
The Hospital's answer and information disclosed substantial documentation of plaintiff's performance problems. In June of 1994, plaintiff was counseled for a "continued pattern of excessive late time. . . ." The supervisor noted, in writing, CT Page 11908 concerning plaintiff: "The most recent infractions occurred in the period of April 14 1994; through May 7, 1994 (five occasions of late time). In the three months prior to this, there were an additional twenty-one occasions of late time that were not addressed in writing. Monica has been tardy thirty percent of the time she has been scheduled to work, too excessive for any employee, especially someone in a management position." (R. p. 317.) In August of 1994, plaintiff was again written up for "continued pattern of excessive late time." The August action represented a formal written warning for tardiness with a warning of progressive discipline.
In addition to continued tardiness, plaintiff was absent from work without an excuse on June 30, 1994, prompting notice that such behavior will lead to suspension or termination.
Plaintiff's evaluation for the period from September to December 1994, noted attendance improvement, but cited numerous other performance difficulties.
An incident on December 30, 1994, resulted in plaintiff receiving a "Final Written Warning" which concluded:
 Immediate and sustained improvement in all aspects of the Assistant Head Nurse role is expected, or Ms. McDonald may face further disciplinary action, up to and including termination.
(R. p. 203).
Plaintiff's performance on March 15, 1995, resulted in her receipt of a further "Formal Written Warning" noting that her inaction in the particular case was "inexcusable." Once again she was warned of suspension and discharge.
The hospital, effective March 15, 1995, switched from a team nursing plan to modular nursing. Plaintiff, between March 15, 1995, and April 19, 1995, used team nursing on fourteen of twenty-four shifts. The requirement for modular nursing was reinforced in this April 20, 1995 memorandum. R. p. 265.)
On June 17, 1997, plaintiff was provided a written "Notice of Termination" characterizing the failure to implement modular nursing as insubordination. CT Page 11909
Plaintiff never introduced documentation or information as to her performance or in rebuttal to the extensive evidence of her unsatisfactory performance. Even in plaintiff's request for reconsideration the temporal relationship between her prior complaint and termination is the only evidence presented. (R. pp. 11-14.)
Plaintiff in her brief cites authority for the proposition that the CHRO must conduct a complete and thorough investigation when making a reasonable cause determination. Dufraine v. CHRO,236 Conn. 250 (1996); Adriani v. CHRO, 220 Conn. 307 (1991) (Adriani I); and Adriani v. CHRO, 228 Conn. 545 (1994) (Adriani II). Those cases are distinguishable in that they did not involve the merit assessment review or preliminary screening process determination. A complete and thorough investigation is not contemplated or practical under the time parameters of §46a-83 (b). Public Act No. 94-238 substantially amended CHRO procedure and practice. Dufraine and Adriani are not controlling authority as to the merit assessment review procedure.
In its merit assessment review the CHRO does not ask whether "reasonable cause or no reasonable cause" exists. Rather, CHRO must determine if "there is no reasonable possibility that investigating the complaint will result in a finding of probable cause." Unquestionably the legislature by the statutory language required far less than a complete and thorough investigation.
The record reveals that the plaintiff's complaint essentially states her conclusion that the termination of employment was in retaliation for her filing of an employment discrimination complaint. The only evidence offered by plaintiff was the time sequence between her discrimination complaint being made known to her employer and her termination of employment. The time sequence alone is not sufficient to prevail in a retaliation case, when the employer presents substantial proof that a valid nondiscriminatory explanation for the termination exists.Gonzalez v. Bulger, 486 F. Sup. 595 (D.D.C. 1980); Payne v.McLemore's Wholesale Retail Stores, 654 F.2d 1130, cert. denied, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).
The employer offered a very substantial body of documentary evidence indicating progressive discipline for work related performance problems, preceding and following the filing of the discrimination complaint. In view of the numerous warnings and CT Page 11910 final warning plaintiff's assertions that she had no "unresolved issues with management" (R. p. 42) was refuted by the employer's answer and supporting documentation. Plaintiff offered no further evidence. The CHRO is correct in arguing that since Public Act No. 94-238 the parties to a complaint (employee and employer) must be active participants in the administrative process, submitting documents to support and/or refute the positions advanced.[3] Plaintiff failed to do this.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.)Dolgner v. Alander, supra, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.; Dolgnerv. Alander, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The record contains substantial evidence to support the conclusion that the substantial proof of a valid non-discriminatory reason for the termination precluded the reasonable possibility that further investigation would result in a probable cause finding. This is especially the case where plaintiff has not met her burden of identifying information which would lead to any other conclusion. CT Page 11911
The appeal is dismissed.
Robert F. McWeeny, J.