[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Rickey Reed appeals two decisions of the defendant Commission on Human Rights and Opportunities (CHRO) dismissing his complaints of employment discrimination, retaliation and harassment against the defendant Department of Transportation (DOT).[1] The CHRO dismissed the complaints CT Page 10754 after investigation pursuant to General Statutes § 46a-83(c). The plaintiff appeals pursuant to § 46a-83a. For the reasons set forth below, the court finds the issues in favor of the defendants.
The two complaints addressed in this appeal arise out of the plaintiff's employment at the DOT. In one complaint, he claims that the DOT denied him a promotion on the bases of his race and sex; in the other complaint he claims that the DOT retaliated against his filing a complaint with the CHRO. The dismissals of these complaints, he claims, resulted from incomplete investigations; improper consideration of irrelevant evidence, speculation and conjecture; and a disregard of the substantial probative evidence in the record.
The scope of the court's review of an agency's decision is very limited. Under General Statutes § 4-183(j), "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record."
Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). "Ultimately, `[t]he question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken.'" (Citations omitted.) Miko v. Commission onHuman Rights Opportunities, 220 Conn. 192, 201 (1991).
As to the first complaint, the record reflects the following. The plaintiff is an affirmative action officer for the defendant DOT. He has been employed by the DOT since 1974. On April 28, 1993, the plaintiff brought a complaint to CHRO alleging that the DOT violated General Statutes §§ 46a-60(a)(1), 46a-60(a)(4),46a-60(a)(6), 46a-70(a), 46a-71(b) and 5-227 and Title VII of the Civil Rights Act by not promoting him to the position of Transportation Director of Contract Compliance and by not CT Page 10755 promoting black males in general to EEOC classified positions of upper management[2]. He claimed that although he received the highest score among the candidates and enjoyed the greatest longevity, he was not chosen because he was male and black. He also alleged in the April 1993 complaint that because he had filed previous discrimination with the CHRO, the DOT retaliated against him by denying him promotional opportunities. The DOT responded to the complaint and Schedule A denying any discrimination or retaliation and alleging that the position of Director of Contract Compliance was filled by a black female who had superior supervisory and managerial experience to the plaintiff. (ROR II, 149-279)[3]. The plaintiff responded in writing to the DOT's response. (ROR II, 86-136). The CHRO investigator interviewed six DOT employees and met with the plaintiff. On November 6, 1996, the CHRO investigator transmitted a draft summary of no reasonable cause to which the plaintiff, through counsel, filed comments. (ROR II, 9-12).
The CHRO investigator responded to those comments (ROR II,3-8), and the CHRO dismissed the April 27, 1993 complaint finding no reasonable cause on November 29, 1996. (ROR II, 26-37).
The CHRO decision, concluded, in part, as follows:
 5. The Transportation Director of Contract Compliance position was responsible for managing, directing and coordinating the respondent's contract compliance programs. This position worked under the Transportation Director of Equal Opportunity Assurance. Both complainant and the successful candidate, Cynthia Cooper (a black female), met the minimum qualifications for the position of Transportation Director of Contract Compliance. Complainant had received a score of 90 on the statewide examination for the position; Cooper had scored an 83. All scores above 70 were passing and all the candidates scoring above 70 were interviewed. Besides complainant, three other respondent employees had passed the exam and were interviewed; these included Thomas DiCioccio (white male), Harold Gibson (black male), and Michael Lennon (white male).
. . . CT Page 10756
 9. The evidence in the case file, when considered in its entirety, does not support a finding that complainant was denied the promotion to Transportation of Contract Compliance due to his race and color, black, and his sex, male. Two white females were also denied promotion to the Transportation Director of Contract Compliance position due to a lack of contract compliance experience and/or a lack of supervisory experience. Evidence indicated that other factors may have played a role in who was selected for the position. Complainant and several of his witnesses identified that both Cooper and Gaston were politically connected with former Governor Lowell Weicker and that the appointment of Cooper may have been political in nature. A review of Cooper's experiences indicated that she was actively involved as an advocate for minorities on the federal, State, and the local levels. Cooper had received the 1988 Governor's Laurel Award for Responsible Social Action.
 10. Additionally, witness statements established that complainant's work unit as a whole did not have a good work reputation. There had been a lack of strong administrative leadership and reports were late and service ratings were not being performed. There also existed problems of resentment between co-workers; each thought that they should get the promotional position. Evidence existed that respondent did not post the Transportation Director of Contract Compliance position as a provisional position due to this resentment between employees within the unit. The position was open to the public. DiCioccio, a member of the unit, identified that he was bitter over not receiving the promotion; DiCioccio felt that he deserved the position as much as complainant did.
(ROR II, 34-35).
As to the issue of retaliation, the CHRO decision concluded,
 12. Complainant contended that his denial of promotions were retaliatory in nature due to his prior complaint filing with CCHRO and EEOC. However, complainant has filed CHRO complainants as early as 1979. Complainant's prior complaints all addressed CT Page 10757 promotional issues, as well as, allegations of differential treatment based on his race and color, black, and his previous oppositions to discriminatory practices. In CCHRO complaint #8240164, complainant alleged that he was denied promotion or reclassification to the higher managerial position of Senior Affirmative Action Officer from his collective bargaining unit status as an Affirmative Action Officer 2. The Commission found no reasonable cause in regard to complainant's complaint. In CCHRO complaint #8640114, complainant alleged that he was refused managerial status; the Commission again found no reasonable cause that discrimination had occurred. In CCHRO complaint #7910319, complainant contended that he was denied the opportunity to perform his duties and that respondent sanctioned discriminatory practices in agreements, arrangements and plans that the respondent was party to. Complainant withdrew this complaint without settlement. On July 3, 1984, complainant had filed EEOC Charge #011842460 alleging that he was denied promotion to the position of Affirmative Action Program Coordinator on February 24, 1984 and that respondent discriminated against blacks as a class in upper management and administrative positions. EEOC found no reasonable cause to support complainant's allegations. Therefore, the facts of the complaint do not establish a nexus between complainant's protected behavior and his denial of promotion to the Transportation Director of Equal Opportunity Assurance and Transportation Director of Contract Compliance. A lack of evidence exists that complainant was treated any differently in regard to the promotions to either Transportation Director of Equal Opportunity Assurance and/or Transportation Director of Contract Compliance that he was prior to his initial complaint filing in 1979. Complainant's prior claims had been investigated and dismissed by both CCHRO and EEOC.
(ROR II, 36). As a result of the above conclusions inter alia, the CHRO investigator determined,
 Consequently, as a result of the application of the foregoing principles to the facts of CT Page 10758 this complaint, the investigator concludes that there does not exist reasonable cause for believing that a discriminatory act has occurred.
(ROR II, 37).
Before determining if there is substantial evidence in the record to support the CHRO's determination, the court first address as the plaintiff's claim that the CHRO failed to perform an adequate investigation. See Dufraine v. Commission on HumanRights and Opportunities, 236 Conn. 250, 261 (1996). General Statutes (Rev to 1992) (a) and (b), § 46a-83 set forth the procedure for investigating a complaint:
 (a) Within ten days after the filing of any discriminatory practice complaint, or an amendment adding an additional respondent, the commission shall cause the complaint to be served upon the respondent together with a notice (1) identifying the alleged discriminatory practice, and (2) advising of the procedural rights and obligations of a respondent under this chapter. The respondent shall file a written answer to the complaint under oath with the commission within thirty days of receipt of the complaint, provided the answer to any complaint alleging a violation of section 46a-64c or 46a-81e shall be filed within ten days of receipt. The executive director of the commission shall refer the same to an investigator to investigate and determine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. The commission may conduct fact-finding conferences during the investigatory process for the purpose of finding facts and promoting the voluntary resolution of complaints. As used in this section and section 46a-84, reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint.
 (d) Before issuing a finding of reasonable cause or no reasonable cause, the investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The investigator shall consider such comments in making his determination. CT Page 10759 The investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than nine months from the date of filing of the complaint,. . . .
A review of the record reveals that the CHRO investigator complied with the statute in conducting his investigation of the April 1993 complaint. Notwithstanding the plaintiff's claim, the investigator interviewed the six witnesses named by the plaintiff in addition to the plaintiff himself and gathered and referred to over one hundred and fifty pages of information from the parties. Under Adriaini v. Commission on Human Rights and Opportunities,220 Conn. 307, 316-17 (1991), the investigator must "consider all reliable probative evidence, including evidence unfavorable to a complainant's claim," to decide whether there is reasonable cause for believing that a discriminatory practice has occurred. The investigator has done so here.
As to the plaintiff's claim that the substantial evidence in the record does not support the dismissal and that the investigator based his decision on conjecture and speculation, the record and the law say otherwise. First of all, this court has a limited scope of review of a CHRO determination of no reasonable cause. Adriani v. Commission on Human Rights andOpportunities, supra, 220 Conn. 314-15. "Reasonable cause" is "a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint." General Statutes (Rev. to 1992) § 46a-83(a). The findings of the investigator that the DOT's failure to promote the plaintiff was not racially motivated nor motivated by the gender of the plaintiff are supported by the record. The record contains evidence to show that the DOT was in compliance with its affirmative action plan and that test scores and longevity were not the only factors considered in determining the most qualified candidate for the position of Director of Contract Compliance. Likewise, the record supports the CHRO determination that the denial of promotion was not retaliatory for the plaintiff's previous complaints of discrimination.
 We conclude that a necessary corollary to allowing the commission to consider all relevant evidence gathered during the investigation is that in making the reasonable cause determination, the investigator, and the commission when reviewing the investigator's recommendation, are entitled to CT Page 10760 make findings on disputed issues of material fact by weighing the credibility of the witnesses and drawing inferences.
Adriani v. Commission on Human Rights and Opportunities, supra,220 Conn. 317. This court cannot retry those issues of fact and credibility that underlie the CHRO determination of no reasonable cause for the April 1993 complaint.
As to the complaint filed in November 1993, the record reflects the following additional facts. On November 1, 1993, the plaintiff filed a complaint with the CHRO alleging that the DOT retaliated against and harassed the plaintiff for filing the April 1993 complaint with the CHRO, for making two Freedom of Information requests and for filing an examination test score appeal in violation of General Statutes § 46a-60(4). The retaliation and harassment was alleged to be two unsubstantiated and unjust performance appraisal ratings, denial of an opportunity to earn a bonus, and harassing conduct regarding sign out procedures and sensitivity training. (ROR 85). On November 22, 1994, the CHRO completed its merit assessment review under General Statutes (Rev to 1994) § 46a-83(b) and retained the complaint for further investigation. (ROR 22-30).
On June 15, 1995, the plaintiff filed an amended complaint adding an allegation of harassment and retaliation that he was involuntarily transferred to the Division of Contract Administration on December 29, 1994. (ROR 70-71). The plaintiff submitted written documents. (ROR 124-239). The DOT answered the complaint and amended complaint and filed responses to Schedule A. (ROR 240-420). The investigator interviewed six DOT employees. (ROR 101-13). On November 12, 1996, the CHRO transmitted a draft summary of no reasonable cause to which the plaintiff filed comments. (ROR 53-66; 9-11). The investigator responded to those comments. (ROR 4-8). The CHRO issued its final decision to dismiss the complaint on December 3, 1996. In that decision, the CHRO concluded in part,
 11. In considering the evidence in its entirety, this investigator does not find a nexus between complainant's filing of discrimination complaints and the ratings on his performance appraisal and/or his transfer to the Division of Contract Administration. Evidence established that any adverse actions against complainants were the result of his personality conflict and poor work relationship CT Page 10761 with his supervisor, Cynthia Cooper.
 12. Additionally, this investigator finds no nexus between complainant's complaint filings and the requirement that he use the sign out log and attend sensitivity training. Cooper described the Contract Compliance Unit as dysfunctional at the time that she took over as Transportation Director of Contract Compliance. Individuals were not completing work; there were long lunches and constant socializing in the office. Cooper instituted the sign out log and had requested sensitivity training in order to improve the office environment. All the Contract Compliance Affirmative Action Officers were required to sign out and use the newly implemented log sheets. Other Affirmative Action Officers, including Thomas DiCioccio and Michael Lennon, were reprimanded for their failure to use the logs; complainant was resistant to signing out. All members of the Contract Compliance Unit were required to attend sensitivity training; this training was in regard to team building.
(ROR, 48).
The plaintiff claims that the investigator did not adequately "take into account" the plaintiff's side of the story as to his involuntary transfer, his performance evaluations and harassment. As recited previously, the record reflects that the investigator did indeed have the plaintiff's side of the story before him. The CHRO investigator performed a thorough investigation by pursuing both corroborating and contradicting evidence in plaintiff's case and addressing each claim made by the plaintiff. He was entitled to resolve "material issues of fact". Adriani v. Commission onHuman Rights and Opportunity, supra, 220 Conn. 319. As noted earlier, this court's review is limited and the dismissal must be sustained "if an examination the record discloses evidence that supports any one of the reasons given." Huck v. Inland Wetlandsand Watercourses, 203 Conn. 525, 539-40 (1987). There is substantial evidence to support the finding of no reasonable cause as to the November 1993 complaint.
The court's role in this matter is simply to determine if substantial evidence exists in the records to support the CHRO's findings and whether the conclusions therefrom are reasonable in each of these dismissals. It is not for this court to usurp the CHRO investigator's role of resolving issue of fact and determining credibility. The court finds substantial evidence to CT Page 10762 support the findings and further finds that the conclusions therefrom are reasonable in both dismissals.
Accordingly, the appeal is dismissed.
DiPentima, J.