[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on the defendant Irving Bork's July 5, 2001 motion to dissolve a notice of lis pendens filed by the plaintiff, CT Page 784 David Fine, against the property of Tower Business Center, LLC.
To resolve a motion for discharge of notice of lis pendens, the court is required to conduct a probable cause hearing. General Statutes §52-325a. The plaintiff bears the burden of establishing probable cause to sustain the validity of his claim. General Statutes § 52-325b (a). "Probable cause is a bona fide belief in the existence of facts essential under the law for the action and such would warrant a man of ordinary caution, prudence and judgment under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. . . ." (Emphasis omitted; internal quotation marks omitted.) Dufraine v.Commission on Human Rights and Opportunities, 236 Conn. 250, 261,673 A.2d 101 (1996). "A probable cause hearing is not intended to be a trial on the merits, nor does it require the plaintiffs to establish their claims by a preponderance of the evidence. . . . The court, in making its determination of probable cause, does so on the basis of the facts before it." (Citation omitted; internal.quotation marks omitted.)Williams v. Bartlett, 189 Conn. 471, 483, 457 A.2d 290 (1983), appeal dismissed, 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983). "The trial court's duty is to weigh the probabilities based on the facts and to exercise its broad discretion in determining whether there is probable cause to sustain the lis pendens." Sanstrom v. Strickland,11 Conn. App. 211, 212, 525 A.2d 989 (1987).
The court finds the following facts. The underlying lawsuit arises out of the business relationship between the plaintiff and the defendant They entered into a business relationship in which they became the joint indirect owners of a parcel of commercial real estate located at 3580 Main Street in Hartford, Connecticut (the "subject property"). They formed two limited liability companies, the first of which was named Tower Business Associates, LLC ("Associates"). At the time of its formation, the plaintiff had a minority 24.747% interest and the defendant had a majority 75.253% interest in Associates. The second limited liability company was named Tower Business Center, LLC (`Center'). At the time of Center's formation, Associates had a majority 99% interest and the defend had a minority 1% interest in Center, and Center's operating agreement required that it have two members, consistent with the Connecticut limited liability company act in effect at the time Center was formed. However, in 1997 that law was amended to allow one member limited liability companies. The sole asset of Center was the subject property and the sole asset of Associates was its majority interest in Center. At all relevant times, both entities existed for the sole purpose of facilitating the parties joint indirect ownership of the subject property.
At some point the plaintiff and the defendant had a disagreement and CT Page 785 they each filed a lawsuit against the other. Thereafter, admittedly acting as a managing member of Associates, the defendant unilaterally and without prior consent of the plaintiff, amended the operating agreement of Center to allow Center to exist with one member, rather than two. Then, unilaterally and without the consent of the plaintiff, the defendant dissolved Associates. By dissolving Associates and empowering Center to have only one member, Bork averted the dissolution of Center by disassociation of Associates and in so doing became the sole member of Center, a single purpose limited liability company and the owner of the subject property.
Although the defendant asserts that the original operating agreement only required two members because the law required it, Bork made no effort to amend the operating agreement until more than three years after the law changed. In addition, he did not amend Centers operating agreement until after he and the plaintiff were embroiled in litigation. Moreover, he did not amend the operating agreement until after he had decided to dissolve Associates which would have triggered the dissolution of Center because it would have lacked the requisite two members. The dissolution of Associates and the amendment of Center's operating agreement were clearly Bork's scheme to obtain sole ownership of the subject property to the exclusion of the plaintiff. The questions for the court are whether the plaintiff has established probable cause to believe that the defendant's acts were impermissible and if so, may reasonably affect an interest in the subject property.
The obligations of members and managers of limited liability companies are clearly established by statute. "A member or manager (of a limited liability company] will discharge his duties under Section 34-140 and the operating agreement in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner he reasonably believes to be in the best interests of thelimited liability company . . ." (Emphasis added) General Statutes §34-141 (a). At the probable cause hearing, the defendant was asked what benefit Associates derived from the amendment of the operating agreement of Center to allow it to exist with just one rather than two members. The defendant was unable to identify a single benefit Moreover, the neutral reason the defendant gave for the amendment in its brief in support of its motion to dissolve the notice of lis pendens, namely to conform to the change in the law which occurred more than three years before the amendment is unpersuasive, as stated above. Instead it would appear that the defendant acting in bad faith, took advantage of his position as the managing member of Associates and amended the operating agreement not for the benefit of Associates, but rather for his own personal benefit by appropriating a company asset the subject property, to himself. CT Page 786
Our statutes also state what results when a member obtains a benefit from any transaction connected with the conduct of the limited liability company without the consent of its minority members. "Unless otherwise provided in writing in the articles of organization or the operating agreement every member and manager must account to the limited liability company and hold as trustee for it any . . . benefit derived by that person, without the consent of more than one-half by number of the disinterested managers or the majority in interest of the disinterested members, from (1) any transaction connected with the conduct or winding up of the limited liability company or (2) any use by the member or manager of its property. . . ." General Statutes § 34-141 (e). The defendant has not asserted that the terms of either the operating agreement or the articles of organization of either Center or Associates authorize Bork to appropriate the subject property to himself and Fine did not consent to such an appropriation.
The plaintiff has met his burden of proof. The court has a bona fide belief that the plaintiff introduced facts essential under the law to allow a reasonable person to conclude that the defendant breached his statutory fiduciary duty to the minority members of Associates and Center and that in so doing Center may not be the legal and equitable owner of the subject property free of the plaintiffs claims of an interest therein.
A plaintiff in an action intended to affect real property may record a notice of lis pendens. General Statutes § 52-325. Accordingly, because this suit does affect an interest in the subject property, the plaintiff is entitled to maintain his notice of lis pendens.
For these reasons the defendants motion to dissolve lis pendens is denied.
 ___________________ Vanessa L. Bryant, J.