[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff Franklin Parlamis seeks a prejudgment remedy in the form of an attachment of real estate owned by the defendant Kelley Wuensch. The dispute involves work done by Thomas Wuensch (Wuensch), Kelley Wuensch's husband, in remodeling and enlarging the Parlamis residence in New Canaan, Connecticut.
In brief, Parlamis alleges that he and Wuensch entered into a contract calling for certain excavation, demolition, first floor and basement work and a substantial enlargement of the second floor of the Parlamis home. The contract price was approximately $96,000. Parlamis alleges that Wuensch breached the contract by employing improper workmanship, improper materials and through other defaults. He alleges fraud, unjust enrichment, a violation of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110a, and fraudulent conveyance of Wuensch's interest in real property to his wife Kelley.
A hearing was held on this application on June 17 and 20, 2002. The evidence was incomplete and highly conflicting. The credibility of both Parlamis and Wuensch was impaired on certain points by the existence of CT Page 7995 other evidence. The evidence showed that Parlamis and Wuensch first began discussing a smaller version of the project, not involving significant second floor work, tin the middle of 2001. Parlamis then decided to add major second floor construction work based on architectural plans drawn by his second (or third) cousin George Tsairis, an architect licensed in New York and New Jersey.
An American Institute of Architects (AIA) form contract consisting of AIA Forms A 105 and A 205 was supplied by Parlamis and signed by Parlamis and Wuensch around October 1, 2001. The full written contract consisted of the AIA forms as completed by Parlamis and some Wuensch proposal forms filled in by Wuensch. (Exhibit 1.) The work went relatively smoothly until some time in November when Parlamis concluded that the roof line and second floor architectural plans were inadequate, or at least, not to his liking. He and Wuensch worked out a new plan which included raising the roof line by over three feet; substantially increasing the pitch of the roof and adding considerable square footage to the living area of the second floor which was to contain a master bedroom, bath and extra room. When these changes had been agreed on, Wuensch had already removed a large portion of the original roof and erected rafters in compliance with the Tsairis plans. Therefore, he was required to undo his work and erect new and considerably longer roof rafters.
At this point the testimony and evidence becomes highly conflicting. In essence, Parlamis claims that Wuensch's workmanship was shoddy, that he fell way behind schedule, and he was not attending to projects as required resulting in the top of the house being left open to the winter elements. On the other hand, Wuensch claims that the second floor plans were never finalized, that in addition to the roof being altered, the placement of the bedroom and bath were changed numerous times, that he was delayed by this uncertainty, and that he was not getting paid. There was testimony by Wuensch, partially confirmed by Mrs. Parlamis, that on two or more occasions Wuensch waited in vain at the Parlamis' residence for Tsairis to show up.
In January Tsairis made his first visit to the Parlamis residence since construction started. Tsairis also operates a construction firm and in January and February brought along a man to assist in putting up rafters. Wuensch who withdrew from the project for a short while continued working, but the relationship with Parlamis broke down. Eventually, in late March 2002, it appears that Tsairis took over the project and worked on it under Wuensch's Home Improvement Contractor's license until the New Canaan Town Building Department ordered a stop. Tsairis now has the appropriate license and has filed new building plans with the New Canaan Building Department and is finishing the project. CT Page 7996
The evidence also shows that Wuensch's services were terminated by Parlamis. When Parlamis sought compensation of $35,000 from Wuensch the latter advised him he was selling his house. In fact, Wuensch did convey his interest in a jointly owned residence to his wife Kelley for no consideration in May 2002. (Exhibit B.) Parlamis claims he has paid Wuensch about $71,000. He is seeking a prejudgment remedy of $185,000 which consists of $135,000 claimed to finish the project and $50,000 to replace work by Wuensch which was allegedly substandard.
The burden of proof governing an application for prejudgment remedies is that the plaintiff must make a showing that there is probable cause that a judgment will be rendered in his favor. General Statutes § 52-578d (a). Probable cause means a standard of proof of facts from which a man of ordinary prudence, caution and judgment would "entertain" consideration of the plaintiffs claim. DuFraime v. CHRO, 236 Conn. 250,261 (1996). It is a lesser burden than the preponderance of the evidence standard generally employed in the final determination of civil cases.
After reviewing all the evidence, this court finds that the plaintiff has sustained his probable cause burden only on his claim that there was a violation of the CUTPA and that violation is based on a violation of the Home Improvement Act in that the contract between the parties did not comply with General Statutes § 20-429 (a)(6).
The court finds a dearth of evidence to support a probable cause finding that Wuensch materially breached the contract. The major problems with this project were (1) Parlamis' decision to change the second floor plans substantially after construction had been partially completed, (2) Parlamis' indecision on the location of the second floor rooms, and (3) lack of architectural supervision which is specifically called for in the contract. The claims of poor workmanship were presented through the testimony of Tsairis, and these were largely refuted by the testimony of John Mastera, a Connecticut licensed architect who testified on behalf of Wuensch. The evidence did show that Wuensch's construction of a portico lacked two small rafters, a problem that could be corrected easily and at relatively little cost. Furthermore, there was little credible evidence that a project initially priced at $96,000 and which was at least 30-40% completed could cost an additional $135,000. As noted previously, there was also little, if any evidence that it would cost $50,000 to replace substandard work.
The claims for unjust enrichment are ill founded. Indeed, an unjust enrichment claim might run in favor of Wuensch were it not for the Home Improvement Act violation discussed below. Similarly, the plaintiff has not produced evidence of the nature so that a reasonable person would entertain a fraud claim that must be proven by clear and convincing CT Page 7997 evidence.
The plaintiff's claim of a CUTPA violation rests on the contention that Wuensch violated the Home Improvement Act, General Statutes §§ 20-418
et seq (HIA). A violation of HIA is a per se violation of CUTPA. General Statutes § 20-427 (b); Woroneki v. Trappe, 228 Conn. 574 (1996). In this case, Parlamis contends that the contract did not comply with HIA because it did not contain any notice of the owner's rights to cancel the contract as required by General Statutes § 20-429 (a)(1). The court finds that the contract does violate HIA in the manner specified. The court is mindful that our Supreme Court has strictly construed MA against home improvement contractors. While at this early stage of the case, the result is somewhat harsh since the AIA contract was presented and largely filled in by Parlamis, but the fact is that neither the AIA forms (generally considered to be a well drafted document for construction projects) nor Wusensch's printed proposal forms contain the required cancellation rights notice. The court finds the probable cause standard met with respect to the CUTPA claim.
The court also finds that there is sufficient evidence for an ordinary person to entertain a fraudulent conveyance claim respecting Wuensch's interest in real property located at 283 Noroton Avenue in Darien, Connecticut which he conveyed to his wife. The evidence reaches the level of probable cause that Wuensch made the transfer for no consideration at a time when he was unable to meet obligations.
Under CUTPA, a plaintiff must show an "ascertainable loss" to establish damages. A plaintiff may also claim punitive damages and attorney's fees, awards that are subject to the discretion of the court. The effect of a CUTPA violation involving HIA is to prevent a contractor from asserting offsets to a homeowner's claim. This may allow Parlamis to prove, and claim damages for, the poor workmanship claims. As stated above, at this stage, the evidence of poor workmanship and other breach of contract claims is minimal. Therefore, the court grants the application for a prejudgment attachment on Mrs. Wuensch's real property in the amount of $1,500.00 reflecting the issues with the portico and some attorney's fees.
 ___________________ ADAMS, J.