[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4808
The plaintiff, Kevin M. Carr (Carr), appeals from the decision of the respondent, the Commission on Human Rights and Opportunities (CHRO), dismissing his discrimination complaint against the defendant, Connecticut Airgas, Inc. (Airgas). Carr appeals pursuant to §§ 46a-94a and 4-183 of the General Statutes, as authorized by § 46a-83a of the General Statutes.
The following facts are reflected in the record. Carr began employment with Airgas on January 1, 1993, when his former employer, Crodyne, was acquired by Airgas. (Return of Record (ROR), pp. 70, 256.) Carr's job title at Airgas was Regional Sale Manager. He worked as a salesman of specialty gas, and also managed and supported the sales of specialty gas among other Airgas salesmen. His territory consisted of four areas, two in New York (Briarcliff and Poughkeepsie) and two in Connecticut (Danbury and Waterbury). (ROR, p. 236.)
Carr's immediate supervisor was Richard Sudock, Sales Manager. (ROR, p. 246.) By a letter dated October 17, 1994, Sudock informed Carr that he was being placed on probation because of performance problems. Specifically, specialty gas sales in Carr's areas had little growth, although company-wide sales were good. (ROR, p. 165.) Further, Sudock informed Carr that his support of outside sales people was sub-par. (ROR, p. 165.)
Carr developed an action plan and met with Sudock on November 9, 1994 to discuss ways to improve his performance. (ROR, p. 249.) By letter dated January 10, 1995, Sudock informed Carr that the probation period had not produced the desired results. (ROR, p. 164.) At a meeting on January 25, 1995, with Sudock and Mike Frescher, Vice President of Finance at Airgas, Carr was terminated. (ROR, p. 87.)
On July, 24, 1995, Carr filed an affidavit of an illegal discriminatory practice with the CHRO. He attested that Airgas terminated his employment because of his age (forty-three), in violation of General Statutes § 46a-60 (a)(1). In response, Airgas states that the Carr was terminated for unsatisfactory performance. (ROR, pp. 246-58.)
In accordance with General Statutes § 46a-83 (b), the CT Page 4809 CHRO first reviewed the complaint and answer and determined that there was a reasonable possibility that a full investigation could lead to a finding of reasonable cause. (ROR, pp. 60-67, 144.) The CHRO then assigned an investigator to conduct an investigation into the merits of Carr's complaint. (ROR, p. 143). As part of her investigation, the investigator held a fact finding hearing. (ROR, pp. 13542, tape.) Following the hearing, the investigator prepared a preliminary draft finding and circulated it to the parties for their review and comment. (ROR, pp. 45-54.) On August 13, 1996, the investigator issued her final decision dismissing Carr's complaint having found no reasonable cause. (ROR, pp. 36-43.) The investigator set forth the following reasons for her decision: (1) Carr did not perform well in the area of securing new accounts, developing additional business with the established accounts, and general growth of specialty gas business in his areas of coverage; (2) Carr tied for last place among Airgas's outside salesmen regarding an Airgas bulk contest distribution; (3) Carr did not improve his performance after being placed on probation; (4) Carr's replacement is younger, however, there is no evidence that Airgas promoted him in order to disadvantage Carr; (5) on January 25, 1995 there were 18 outside sales representatives, and 50% were 40 years old or older; (6) Richard Sudock and Michael Frescher testified on behalf of Airgas, and their testimony was factually true and worthy of credence. (ROR, p. 42.)
Pursuant to General Statutes § 46a-83 (e), Carr requested reconsideration. (ROR, pp. 1824.) The CHRO rejected Carr's request for reconsideration. This appeal followed.
On December 28, 1996, Carr commenced this appeal of the CHRO's decision in accordance with General Statutes §§ 46a-94
and 4-183, claiming that the CHRO's finding of no reasonable cause was not based on reliable, probative and substantial evidence in light of the entire record. "Appeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." (Citations omitted; internal questions marks omitted.) Office of Consumer Counsel v. Dept. of Public UtilityControl, 234 Conn. 624, 640, 662 A.2d 1251 (1995).
Sections 46a-94a and 4-183 of the General Statutes require CT Page 4810 that an appealing party be aggrieved. "[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must . . . demonstrate a specific personal and legal interest in the subject matter of the decision . . . Second, the party . . . must . . . establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) United Cable TelevisionServices Corp. v. Dept. of Public Utility Control, 235 Conn. 334,342-43, 663 A.2d 1011 (1995).
With respect to aggrievement, Carr alleges that Airgas discriminated against him because of age in violation of General Statutes § 46a-60 (a)(1). That statute forbids any discrimination in the workplace on account of the employee's age. Therefore, the court finds that Carr has a specific, personal and legal interest in the subject matter of the CHRO's decision. Since the CHRO found in favor of Airgas, Carr's legal interest has been specially and injuriously affected by the decision. Thus, the court concludes that the plaintiff is aggrieved within the meaning of sections 46a-94a and 4-183.
"General Statutes § 4-183 (c) provides that an appeal must be filed with the Superior Court within forty-five days after the hearing officer's final decision was mailed [to the claimant]. Failure to appeal within the forty-five days deprives the court of subject matter jurisdiction." Ann Howard's ApricotsRestaurant, Inc. v. CHRO, 237 Conn. 209, 219-20, 676 A.2d 844
(1996).
The CHRO mailed its notice of final agency action to Carr via certified mail on November 22, 1996. Carr served a copy of the appeal upon Connecticut Airgas, Inc., and the State of Connecticut Commission on Human Rights and Opportunities, via certified mail, on January 10, 1997. Carr filed his appeal with the court on January 2, 1997. In accordance with the preceding facts, the present appeal was timely filed and properly served within the forty-five days.
The appellant asserts that the CHRO's decision should be set aside and reversed and the case remanded for further investigation because "the decision of the CHRO violates the law, CT Page 4811 including Connecticut General Statutes Section 4-183, and prejudices the substantial rights of Carr, in the following respects: (a) The CHRO refused to investigate, review and consider evidence of three (3) witnesses; (b) The CHRO refused to obtain, review and consider original documentation it requested from Airgas that could support or refute Airgas' explanation of its employment decision, and (c) The CHRO dismissal was not supported by reliable, probative and substantial evidence."
General Statutes 46a-83 (b) empowers the CHRO to dismiss any complaint if, after reviewing "the complaint, the respondent's answer and the responses to the commission's requests for information, if any, and the complainant's comments, if any, to the respondent's answer and information responses. . . . the [executive director or his designee] determines that . . . there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause. . . ." Reasonable cause in this context means "a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint." General Statutes 46a-83 (c). "[T]he reasonable cause standard requires the commission to consider all reliable probative evidence, including evidence unfavorable to the complainant's claim." Adriani v. Commission on Human Rights Opportunities, 220 Conn. 307, 316-17, 596 A.2d 426 (1991).
The scope of review to be exercised by the trial court in reviewing a CHRO determination is limited. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Dufraine v. Commission on Human Rights Opportunities, 236 Conn. 250, 259, 673 A.2d 101 (1996). "The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." Id., 260. "This `substantial evidence rule' is embodied in General Statutes § 4-83 (j). . . ." Id.
Section 4-183(j) provides that when reviewing an agency determination on appeal, the "court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative CT Page 4812 findings, inferences, conclusions, or decisions are: . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . ."
 I WHETHER THE INVESTIGATOR'S ACTIONS WERE BASED ON UNLAWFUL PROCEDURE
Carr argues that the investigator's actions were based on unlawful procedure because the CHRO failed to enforce the production of documents. Specifically, Carr states that the CHRO failed to compile the "original" sales figures, which were used to evaluate Carr's job performance. Carr correctly asserts that General Statutes § 46a-83 (b) requires the CHRO to review the responses to the CHRO'S requests for information. The evidence in the record, however, reflects that the CHRO did receive and review the documents that it requested from Airgas. (ROR, p. 44, 103; tape.) The investigator asked Airgas to provide regional sales figures for the years of 1993 and 1994. (ROR, p. 103.) At the fact-finding conference, Airgas did provide this information. (ROR, p. 230; tape.)
 II WHETHER THE RECORD IS INCOMPLETE, UNRELIABLE, AND ITS PROBATIVE VALUE IS UNCERTAIN
Carr argues that the record is incomplete, unreliable, and its probative value is uncertain because three witnesses who provided affidavits were not contacted, and their statements were not considered. To support his position, Carr asserts that the statements were not referred to in the CHRO's finding of no reasonable cause. The investigator, however, stated that the "the table of contents attached to the finding only references Complainant's and Respondent's evidence which is actually cited in the finding. In no way does it indicate that other evidence was not considered." (ROR, p. 44.) Further, the record reveals the following. The three witnesses who provided affidavits were Mark Cohen, Charles Oliver, and Kathryn Boris. Mark Cohen, age thirty-two, allegedly replaced Carr at Airgas. Cohen's affidavit affirms that his duties as salesman included the solicitation and support of specialty gas sales. (ROR, p. 113.) Oliver stated he had developed a successful sales territory, but was replaced by employees in their thirties. (ROR, pp. 23-24, 98.) In Boris's CT Page 4813 affidavit, she states that Carr's seniority and high salary were targets of management's comments. Further, she reported that, at an exit interview, she was asked to sign a false statement asserting that she left because of unfair treatment by supervisors, including Kevin Carr. (ROR, 99.) Based on the evidence above, Carr's contention that the record is incomplete, unreliable and has uncertain probative value is not supported by the record.
Carr also argues that the CHRO's investigation was incomplete because the three witnesses were not interviewed. Pursuant to § 46a-83 (b), however, "the CHRO [can] dismiss a complaint of employment discrimination without conducting a full investigation, since that enactment provides for dismissal where the CHRO determines that there in not a reasonable possibility that an investigation will result in a finding of reasonable cause." Cohen v. Commission on Human Rights and Opportunities, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 549621 (March 1, 1996, Hodgson, J.); see also Turner v. Commission on Human Rights, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 383393, (October 7, 1996, McWeeny, J.) .
In the present case, pursuant to § 46a-83 (c), the investigator conducted a fact-finding conference to determine if there was reasonable cause to believe a discriminatory practice had been committed. Nowhere in § 46a-83 (b) or (c) does it state that witnesses must be interviewed in order to determine reasonable cause. Although, as discussed below, such reasonable cause determination must still be supported by substantial evidence. Section 4-183(j)(5) and (6); Dufraine v. Commission onHuman Rights Opportunities, supra, 259.
 III WHETHER THE INVESTIGATOR'S DECISION WAS BASED ON SUBSTANTIAL EVIDENCE
When taken as a whole, the evidence in the record supports the investigator's final decision dismissing the plaintiff's complaint for no reasonable cause. "In reviewing decisions made by an administrative agency, a reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be CT Page 4814 substantial. . . ." (Internal quotation marks omitted.) Adrianiv. Commission on Human Rights Opportunities, 228 Conn. 545,550-51, 636 A.2d 1360 (1994). The CHRO is entitled to weigh the evidence before it, and "the reviewing court must defer to the agency's assessment of the credibility of witnesses. . . . Ultimately, [t]he question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports the action taken." (Citations omitted; internal quotation marks omitted.) Miko Commission on HumanRights Opportunities, 220 Conn. 192, 200-01, 596 A.2d 396
(1991).
At the fact-finding conference, Mike Frescher and Richard Sudock, Vice President of Finance and General Manager of Airgas, respectively, testified on behalf of Airgas, and Carr testified on his own behalf. Sudock testified that, while sales of specialty gas was generally good company-wide, the territory under Carr's supervision was not performing well. (ROR, p. 247; tape.) Further, he identified other performance problems: customer dissatisfaction with plaintiff's response time, and deficient support of outside personnel. (ROR, tape.)
In support of the testimony provided by Sudock, Airgas submitted regional sales figures for branches within Carr's sales territory for the years 1993 and 1994. (ROR, p. 230.) Further, the record contains evidence that salesmen under Carr's supervision were not performing well. (ROR, p. 147-48, 178.) The record also reflects that, on January 25, 1995, nine out of eighteen outside representatives at Airgas were forty years old or older. (ROR, p. 50, 235.)
With the evidence and testimony before her, the investigator gave credence to the Airgas's testimony, which is within her discretion. In light of the substantial evidence in the record, the CHRO's investigation met the standards required by General Statutes § 46a-83, and Carr's appeal from the findings of the CHRO did not meet the standards required by General Statutes § 4-183(j) to sustain the appeal. Accordingly, this appeal is dismissed.
Mihalakos, J.